SEDGWICK LLP
CAROLINE H. MANKEY   (Bar No. 187302)
*caroline.mankey@sedgwicklaw.com*
801 South Figueroa Street, 19th Floor
Los Angeles, CA  90017-5556
Telephone: 213.426.6900
Facsimile: 877.547.6580

Attorneys for Plaintiffs
Cali Raised LED and Blake Hamar

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALI RAISED LED, a California sole proprietorship, BLAKE HAMAR, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MAMA RAGO LLC, a California limited liability company d/b/a RAGO FABRICATION; MELISSA RAGO, an individual; MARIO RAGO, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR: (1) TRADE LIBEL; (2) DEFAMATION (3) DECLARATORY RELIEF; (4) FALSE DESIGNATION OF ORIGIN; (5) COMMON LAW UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A); (6) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200; AND (7) COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiffs Cali Raised LED ("Cali") and Blake Hamar hereby complain against defendants Mama Rago LLC, d/b/a Rago Fabrication, Melissa Rago, and Mario Rago (collectively, "Defendants") and allege as follows:

83734216v1                                  1

## NATURE OF COMPLAINT

1.     This lawsuit is made necessary by the malicious and widespread enactment of a "smear campaign" against Plaintiffs Cali and Blake Hamar by Defendants and the unauthorized and confusing use by Defendants of Cali's trade name and copyright protected photographs of Cali's products and text from its website to promote Defendants' own competing product line.

2.     Defendant Mama Rago LLC d/b/a Rago Fabrication ("Rago") was a supplier of brackets used by Cali to attach its LED lighting products to vehicles. During the course of the parties' relationship, Defendants decided to compete with Cali and began selling LED lighting bars through a new website they created, www.freedomledbars,com.  In June 2016, Rago moved to Texas, took a 1-2 month hiatus from production, raised its prices, and unilaterally imposed other new and unacceptable terms for Cali's purchases from it in what now appears to be an effort to drive Cali out of business and destroy Rago's competition.  Rago and its principals thereafter took to the Internet in a malicious and retributive attempt to interfere with Cali's customer and dealer relationships, destroy its hard-earned reputation, and diminish its sales by accusing Cali of stealing and copying its product designs, lying to customers and dealers, and "ripping off" Rago and others.

3.     None of Defendants' statements are true in any respect.  They are defamatory *per se* in that they attack Cali's honesty and credibility in its business operations and relations.  They also attack the quality of the products sold by Cali to customers, and they are blatantly intended to cause Cali pecuniary injury. Defendants have refused to retract their statements and have demanded that Cali "cease duplicating" Rago's products, requiring this lawsuit to protect and declare Cali's rights going forward.

4.     In fact, it is Defendants who have "ripped off" Cali, having copied photographs and text directly from Cali's website and reproduced them on Defendants' websites with the distinctive trade name "Cali Raised" highly visible,

creating confusion as to Cali's affiliation with or sponsorship of Rago and as to the actual source of the goods Defendants are promoting, and constituting copyright infringement.

## **PARTIES**

5.      Plaintiff Cali is a California sole proprietorship owned and operated by Blake Hamar with its principal place of business in Santa Fe Springs, California.

6.      Plaintiff Blake Hamar is an individual and a citizen of the state of California.

7.      Plaintiffs are informed and believe that Defendant Mama Rago LLC d/b/a Rago Fabrication is a California limited liability company with its principal place of business in Mountain Home, Texas.

8.      Plaintiffs are informed and believe that Defendant Melissa Rago is a citizen of the state of Texas.

9.      Plaintiffs are informed and believe that Defendant Mario Rago is a citizen of the state of Texas.

10.      Plaintiffs are informed and believe that Defendants Does 1 through 20, inclusive, are participants in Defendants' libelous smear campaign against Cali (as hereinafter described).  The true names, whether corporate, individual, or otherwise of Does 1 through 20, inclusive, are presently unknown to Plaintiffs and, therefore, these Does are being sued by fictitious names, and Plaintiffs will seek leave to amend this Complaint to include the true names and capacities when the same have been ascertained.

11.      Plaintiffs are informed and believe that  at all times relevant to this action, each of the Defendants was the agent, affiliate, officer, director, manager, member, principal, alter-ego, and/or employee of the other Defendant and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full

1  knowledge of each and every violation of Plaintiff s' rights and the damages to

2  Plaintiffs proximately caused thereby.

3  **JURISDICTION AND VENUE**

4      12.    The Court has subject matter jurisdiction over the claims alleged by

5  Plaintiffs because their claims arise under the Lanham Act, 15 U.S.C. §§ 1051, *et*

6  *seq.*, and the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and jurisdiction is conferred

7  by 28 U.S.C. §§ 1331 and 1338(a) and (b).  The Court also has jurisdiction over the

8  claim for declaratory relief pursuant to 28 U.S.C. § 2201(a).  This Court also has

9  supplemental jurisdiction over Plaintiffs' state law claims, under 28 U.S.C. § 1367

10  because they arise out of the same matters and transactions alleged in this complaint.

11      13.    Venue is properly laid in this district under 28 U.S.C. § 1391(b)(2) in

12  that a substantial part of the events giving rise to the claim occurred in this district.

13  **FACTUAL BACKGROUND**

14      14.    Plaintiff Cali is a Southern California based LED lighting distributer

15  and retailer.   It provides energy efficient LED lighting products to hunters,

16  fishermen, off-road lovers, ATV riders, and numerous other customers primarily for

17  use on boats, trucks and other vehicles.  Cali's motto is to provide the highest quality

18  products at the most affordable prices.  Cali has built a solid following of customers

19  and has over a 4 ½ star rating.  Cali's reputation is very important to Cali, as is its

20  ability to deliver fast service, high quality, innovative products, at affordable prices.

21      15.    Plaintiff Blake Hamar, the founder of Cali, met Mario Rago, the

22  original owner of Rago, in approximately 2015 through the social media website

23  Instagram.  Mr. Hamar learned that Mr. Rago was experienced in metal fabrication

24  and welding training and inquired whether Mr. Rago would fabricate brackets to

25  attach Cali's lighting products to vehicles.  Rago was also a small business and was

26  operating out of its garage.  Cali is informed and believes that, when Mr. Hamar met

27  Mr. Rago in 2015, Mr. Rago had never before fabricated brackets for mounting LED

28  lighting on vehicles.  In fact, when Rago first began fabricating brackets for Cali,

4

Sedgwick LLP

Rago did not have all of the fabrication equipment that it needed, so it used the equipment at a fabricating school. Cali later loaned Rago the deposit money that Rago needed to purchase a press brake, which Rago needed to fabricate the brackets. Mr. Hamar informed and instructed Mr. Rago on the types and designs of brackets that Cali needed, and Mr. Rago began fabricating the requested brackets under the trade name Rago Fabrication. Rago holds no patent rights associated with any of the brackets that Rago manufactures.

16. Initially, Cali and Rago enjoyed a good working relationship. Cali sold brackets manufactured by Rago in connection with Cali's lighting products and accurately identified Rago as the source of those brackets.

17. Thereafter, Mario Rago transferred ownership of Rago to his wife, Defendant Melissa Rago, when Mr. Rago went on permanent disability so as to avoid having his work at Rago interfere with his disability status, even though Mario Rago continued to do the majority of the labor for Rago.

18. Once ownership of the business was transferred to Melissa Rago, Cali's relationship with Rago became strained. Not only was Cali being forced to be complicit in what appeared to be disability fraud, but Cali began having problems with Rago packing the brackets incorrectly, not putting instructions in the boxes, packaging incorrect brackets together, and, most disturbing to Cali, Rago began inserting "coupons" in the packaging of brackets sold by Cali to Cali's customers, encouraging Cali's customers to make their next purchases from Rago directly.

19. On June 17, 2016, Rago notified Cali by email that it was relocating to Texas, would not be accepting orders after June 24, 2016, would not be making brackets for one to two months, would be raising its prices, would require a minimum order of $4,500 from dealers in order for them to receive free shipping, and would require its dealers to sell its products at minimum advertised prices determined exclusively by Rago. In other words, Rago sought to penalize Cali and increase Cali's costs of doing business as a result of Rago's decision to move out of state.

20.     Cali is informed and believes, and based thereon alleges, that on June 17, 2016, when Rago notified Cali of its relocation and changes in terms, Cali was the source of approximately 90% of Rago's business, and that Rago did not send the notice to any customer other than Cali.  Cali is further informed and believes, and based thereon alleges, that at the time Rago sent the notice to Cali, Defendants were already planning to begin competing unfairly with Cali, had begun planning ways to appropriate Cali's clients and business, such as by contacting Cali's supplier of LED products directly to source LED products to Rago, and were already plotting their smear campaign against Plaintiffs.

21.     Rago's cessation in production of brackets for one to two months would have crippled Cali's business.

22.     After receiving Rago's notice, Cali had no choice but to seek another supplier that was more geographically convenient, cost effective, honest, and reliable.  Cali secured another supplier, began obtaining similar, but different, brackets from that supplier to sell to customers in connection with Cali's lighting products, and removed all references to Rago from its website and all other marketing and packaging materials.  Cali is now finding it much easier to get product, and is able to offer better pricing to its growing customer base.

23.     In furtherance of its effort to destroy the competition posed by Cali and appropriate Cali's clients and business, Rago commenced a smear campaign against Plaintiffs, posting false and libelous statements of fact about Cali and Mr. Hamar on industry forum websites and social media, including:

a.     Melissa Rago posted on Facebook: "Cali Raised LED is ripping off Rago Fabrication products and calling them their own.  [¶]  We NEVER gave anyone permission to knock off our brackets.  We stopped selling to CaliRaised after we found out he was contacting businesses telling them he owned us.  Pretty scammy to me.  [¶]  I was told that imitation is the sincerest form of flattery but I just think it goes to show the type of integrity a business

has.  Ripping off a veteran owned business' product line is pretty low.  [¶]
WATCH OUT he will rip you off too!  HE is a FRAUD."

      b.     Rago posted on Instagram: "Spread the word.  Cali Raised Led
Stealing every product we make!"

      c.     Rago further posted on Instagram: "***FRAUD ALERT*** Cali
Raised LED has STOLEN all of our product designs and is having them
copied and reproduced.  BOYCOTT THESE SCAMMERS!"

      d.     Rago posted on Instagram: "@ndavey99  Thanks. Please spread
the word.  If you ever need any more products, DM us.  We will get you a
discount.  We can also get you a light package from a company that doesn't
rip people off."

      e.     Rago posted on Instagram: "@sprucetaco  Oh you are not the
only person that thought he owned us.  He went as far as contacting potential
dealers stating he owned us and they were his brackets.  We also had angry
customers call us because they didn't receive products and were lied to about
shipping."

      f.     Rago posted on Instagram: "No denying they copied us.  They
are scammers.  They were one of our dealers of our products until they started
telling people they owned us and were stealing our customers.  Once we
confronted them, they took all of our product and had them reproduced by
someone else."

24.    None of these statements are true.  At no time did Plaintiffs steal any of
Rago's product designs.  At no time did Plaintiffs tell dealers or anyone else that
they owned Rago.  At no time did Cali steal any of Rago's customers.  Cali is
informed and believes that it is impossible that any "angry customers" called Rago
because they did not receive products, because all of Cali's customers ordered their
products from Cali directly, not from Rago, so these alleged customers would have
had no reason to contact Rago about missing products or shipping issues.

25.     Rago also incited third parties -- individuals who are not even customers of Cali -- to also post false and libelous statements about Cali on industry forum websites and social media, including:

a.     Hannah Pemberton posted on Facebook: "Committed fraud and lied about the origin of their product.  Disgraceful and disgusting.  Avoid this scammer at all cost."

b.     Sarah Sophia Brown posted the following review of Cali on Facebook: "Thieves and liars!  They shamelessly ripped off Rago Fabrications!"

26.     None of these statements are true.  Moreover, neither Hannah Pemberton, nor Sarah Sophia Brown, are customers of Cali.  Cali is informed and believes that Ms. Pemberton and Ms. Brown are friends of Melissa Rago who posted these false statements at the direction of Melissa Rago.

27.     Customers, potential customers, and other third parties saw the false postings about Cali and responded that they would stop doing business with Plaintiffs as a result.  For example:

a.     An Instagram user with the profile name "xxdanactivexx" posted in Instagram in response to Rago's false statements about Cali: "please send me decals as well!  I'm going to drop them as well after hearing this!"

b.     An Instagram user with the profile name "sprucetaco" posted: "Just wrong on so many levels."

c.     An Instagram user with the profile name "Taco_yota" responded: "hey I was about to buy a light…"  The remainder of the post is cut off from the screen shot, but it suggests that this user changed his or her mind about making a purchase from Cali.

d.     An Instagram user with the profile name "sleipnir_tacoma" responded: "@ragofabrication  always!  I hope they get shutdown [sic] for the terrible customer service and dirty ways""

Sedgwick

28.    Most disturbing, on September 1, 2016, Rago posted a photograph of a handgun on Instagram with a comment that it was the newest member of the Rago family.  An Instagram user with the profile name "dylanrp23" responded: "Damn, are you that mad about Cali Raised copying your designs???  Lol"

29.    Rago also posted a statement on the forum www.tacomaworld.com that: "I wanted to try to reach out to your team one last time regarding the duplication of our products that are being sold and marketed on your forum. .. They are exact duplicates of our product without any design or ingenuity changes that was done maliciously to harm our company.  [¶]  We meet with an attorney today to move forward with this legally.  We have full intent of protecting our products and our designs.  As we all know legal matters are costly but with the evidence just shown here alone illustrates the willful intent to duplicate our products."

30.    The Internet sites where Rago posted these statements, such as Facebook and Instagram, have countless viewers.  Plaintiffs are informed and believe that another forum where Rago posted its comments, www.tacomaworld.com, has approximately 130,000 viewers, all or most of whom are actual or potential customers of Cali due to the fact that the forum is focused on the specific market that comprises the majority of Cali's customer base.

31.    On August 31, 2016, counsel for Plaintiffs sent a cease and desist letter to Defendants, and to Sarah Sophia Brown, demanding that the posts be removed and that Rago post retractions of the statements on all websites and social media where its libelous statements had been posted.  Ms. Brown promptly removed her posts, but Defendants' libelous posts intensified, leaving Plaintiffs no choice but to file this lawsuit.

32.    On September 1, 2016, counsel for Plaintiffs received an email from Melissa Rago stating that Defendants would remove their online posts about Cali, but refusing to retract the statements on the ground that the statements were true.  Ms. Rago also demanded, among other things, that Cali "cease duplicating our

Sedgwick LLP

1  company's products."

2      33.    On September 2, 2016, Plaintiffs discovered that as early as July 9,

3  2016, Defendants had created a new website, www.freedomledbars.com, on which

4  to sell brackets in competition with Cali, and that the images posted by Defendants

5  on that website showed LED bars branded by Cali and visibly bearing the words

6  "Cali Raised" that denote Cali as the source of the goods.  Defendants' website,

7  www.ragofabrication.com, also contained photographs of Cali's LED lighting

8  products taken from Cali's website, and text that is a verbatim copy of text appearing

9  on Cali's website.  Many of these photographs and the text from the Cali website

10  were authored by Mr. Hamar, and belong exclusively to him.  At no time did

11  Mr. Hamar or Cali give Defendants authorization to use these photographs or any of

12  the text from Cali's website on Defendants' website.  Defendants also posted on their

13  website links to installation videos, which linked to Cali's YouTube videos.

14  **FIRST CLAIM FOR RELIEF**

15  (Trade Libel)

16      34.    Plaintiffs incorporate the allegations of each foregoing paragraph as

17  though fully set forth herein.

18      35.    Rago has publicly posted false statements of fact, including that Cali

19  "is ripping off Rago Fabrication products and calling them their own," stealing

20  every product Rago makes, "has STOLEN all of our product designs and is having

21  them copied and reproduced, contacted potential dealers stating Cali owned Rago,

22  Rago "had angry customers call us because they didn't receive products and were

23  lied to about shipping," and that Cali "took all of our product and had them

24  reproduced by someone else."

25      36.    No privilege protects the statements made by Rago.

26      37.    The statements made by Rago disparage the quality of Cali's products

27  and services by stating that the products are stolen, copies and not genuine, that

28  Cali's customers did not receive products they ordered, and that they were lied to

Sedgwick LLP

10

1   about shipping.  False claims that a party's products violate a patent amount to a

2   denigration of those products no less than if they are alleged to be defectively

3   designed or manufactured.  *E.g., Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal.

4   App. 4th 1017, 1037 (2002).

5       38.     Moreover, Cali and Rago are now competitors with respect to their

6   efforts to supply customers with brackets to attach LED lighting products to

7   vehicles.  Rago's statements that Cali is dishonest are actionable.

8       39.     Plaintiffs are informed and believe that Rago recognized and intended

9   that its statements were likely to cause pecuniary loss to Cali in that they were

10  intended to influence potential purchasers not to buy products from Cali.

11      40.     As a direct and proximate result of Rago's widely distributed false

12  statements, Cali has suffered pecuniary damages through its loss of actual sales and

13  customer loyalty, and damage to its reputation, as evidenced by the responses to the

14  posts from Cali's customers and potential customers, for which Cali is entitled to an

15  award of damages.

16      41.     Defendants' wrongful conduct has caused and, if not enjoined, will

17  continue to cause irreparable and continuing harm to Cali, for which it has no

18  adequate legal remedy.  Accordingly, Cali is entitled to provisional, preliminary and

19  permanent injunctive relief.

20      42.     Defendants' conduct in making false and libelous statements about Cali

21  and its business practices was and is intentional, willful and malicious, with a

22  conscious disregard for Plaintiffs' rights.  Plaintiffs are therefore entitled to an award

23  of punitive damages pursuant to California Civil Code Section 3294.

24                          **SECOND CLAIM FOR RELIEF**

25                                (Defamation)

26      43.     Plaintiffs incorporate the allegations of each foregoing paragraph as

27  though fully set forth herein.

28  ///

Sedgwick LLP

83734216v1                                        11

44.     Rago has intentionally and publicly posted false statements that imply assertions of objective facts, including that Cali "is ripping off Rago Fabrication products and calling them their own," stealing every product Rago makes, "has STOLEN all of our product designs and is having them copied and reproduced, contacted potential dealers stating Cali owned Rago, Rago "had angry customers call us because they didn't receive products and were lied to about shipping," and that Cali "took all of our product and had them reproduced by someone else."

45.     No privilege protects the statements made by Rago.

46.     The statements made by Rago have a natural tendency to injure Plaintiffs' reputation in that they accuse Cali and Mr. Hamar of dishonesty and lack of integrity, and cause special damage to Plaintiffs, and have been communicated to numerous persons who understand the defamatory meaning of the statements and their application to Cali and Mr. Hamar, and their honesty and credibility in their business operations and relations.   Indeed, they specifically referred to Mr. Hamar in their statements that "HE is a FRAUD" and "[he] went as far as contacting potential dealers stating he owned us and they were his brackets."   As such, the statements are libelous *per se*.

47.     Plaintiffs are informed and believe that Rago recognized and intended that its statements were likely to cause pecuniary loss to Plaintiffs in that they were intended to influence potential purchasers not to buy products from Cali.

48.     As a direct and proximate result of Rago's widely distributed false statements, Plaintiffs have suffered pecuniary damages through their loss of actual sales and customer loyalty, and damage to their reputation, as evidenced by the responses to the posts from Plaintiffs' customers and potential customers, for which Plaintiffs are entitled to an award of damages.

49.     Defendants' wrongful conduct has caused and, if not enjoined, will continue to cause irreparable and continuing harm to Plaintiffs, for which they have no adequate legal remedy.   Accordingly, Plaintiffs are entitled to provisional,

1 preliminary and permanent injunctive relief.

2      50.     Defendants' conduct in making false and libelous statements about

3 Plaintiffs and their business practices was and is intentional, willful and malicious,

4 with a conscious disregard for Plaintiffs' rights.  Plaintiffs are therefore entitled to an

5 award of punitive damages pursuant to California Civil Code Section 3294.

6                        **THIRD CLAIM FOR RELIEF**

7                              (Declaratory Relief)

8      51.     Plaintiffs incorporate the allegations of each foregoing paragraph as

9 though fully set forth herein.

10      52.     This is an action for declaratory judgment of no state or federal,

11 statutory or common law trademark infringement, trade dress infringement,

12 copyright infringement or patent infringement under the Lanham Act, 15 U.S.C.

13 § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 501, *et seq.*, the U.S. Patent Act,

14 15 U.S.C. § 271, *et seq.*, or any other state or federal legal authority.

15      53.     An actual and justiciable controversy exists between Plaintiffs and

16 Defendants regarding Defendants' statements that Cali stole "all of [Rago's] product

17 designs and is having them copied and reproduced" and that Plaintiffs told dealers

18 that they owned Rago.  Rago also posted on www.tacomaworld.com that it had met

19 with an attorney and planned to use legal proceedings to protect its purported

20 product designs.  On September 1, 2016, Melissa Rago additionally sent an email to

21 counsel for Cali demanded that Cali "cease duplicating" Rago's products.  Rago's

22 statements and demands have caused Plaintiffs to have a reasonable apprehension

23 that they will be subject to a claim by Rago for liability for infringement.

24      54.     Plaintiffs claim, and seek this Court's declaration, that Rago does not

25 own any valid trademarks, trade dress, copyrights, or patents associated with its

26 product designs, and that Plaintiffs did not directly, vicariously or contributorily

27 make, copy, buy, sell, reproduce or otherwise infringe on any product designs that

28 may be owned by Rago.

Sedgwick LLP

83734216v1                                        13

1

## FOURTH CLAIM FOR RELIEF

2

(False Designation of Origin Under 15 U.S.C. § 1125(a))

3    55.    Plaintiffs incorporate the allegations of each foregoing paragraph as

4  though fully set forth herein.

5    56.    The trade name CALI RAISED (the "Mark") is a distinctive indicator

6  of goods and services originating with Plaintiffs.  Defendants' unauthorized use of

7  the Mark on its websites is likely to cause and, on information and belief, has

8  actually caused confusion in the marketplace by creating the false and mistaken

9  impression that Defendants' products and/or services are affiliated, connected or

10  associated with Plaintiffs, or that they originate with, or are sponsored or approved

11  by Plaintiffs.

12    57.    Defendants' use of the Mark has caused and, if not enjoined, will

13  continue to cause, irreparable and continuing harm to Plaintiffs in the diminution of

14  the value and goodwill the Mark, and in its impairment to serve as a trademark, for

15  which Plaintiffs have no adequate legal remedy.  Accordingly, Plaintiffs are entitled

16  to provisional, preliminary and permanent injunctive relief to compel cessation of all

17  infringing and otherwise harmful conduct.

18    58.    As a direct and proximate result of Defendants' wrongful conduct,

19  Plaintiffs have been and will continue to be damaged by, without limitation, lost

20  sales and diminution in the value of the Mark and in its reputation and goodwill, in

21  an amount to be proven at trial.

22

## FIFTH CLAIM FOR RELIEF

23

(Common Law Unfair Competition)

24    59.    Plaintiffs incorporate the allegations of each foregoing paragraph as

25  though fully set forth herein.

26    60.    Defendants' misconduct constitutes unfair competition in that it offends

27  established public policy and is immoral, unethical, oppressive, unscrupulous and

28  injurious to consumers.

1    61.    Defendants' misconduct has resulted in damage to Plaintiffs, without

2    limitation, in the form of lost profits and damage to reputation and goodwill.

3    62.    The acts of unfair competition alleged herein were committed with

4    oppression, fraud and malice.  Specifically, Defendants knew or acted with reckless

5    disregard of the fact that they have violated Plaintiffs' rights and are competing

6    unfairly.  Therefore, Plaintiffs request the imposition of exemplary damages

7    pursuant to California Civil Code § 3294.

8    ### SIXTH CLAIM FOR RELIEF

9    (Unfair Competition in Violation of the

10   California Business & Professions Code Section17200)

11   63.    Plaintiffs incorporate the allegations of each foregoing paragraph as

12   though fully set forth herein.

13   64.    California Business & Professions Code Section17200 prohibits any

14   unlawful, unfair or fraudulent business act or practice.  Defendants are competing

15   with Plaintiffs in the LED lighting market.  Defendants' misconduct set forth above

16   constitutes unfair competition in violation of the California Unfair Business

17   Practices Act, Cal Bus. & Prof. Code § 17200, *et seq.*

18   65.    Defendants have engaged in a business practice of ongoing unlawful

19   defamation and trade libel against Plaintiffs.  Unless Defendants' unfair practices

20   against Plaintiffs are enjoined, Plaintiffs will continue to sustain financial injury and

21   irreparable damage to their business and reputation, and competition will decrease in

22   the market.

23   66.    Defendants' wrongful conduct has caused and, if not enjoined, will

24   continue to cause irreparable and continuing harm to Plaintiffs, for which they have

25   no adequate legal remedy.  Accordingly, Plaintiffs are entitled to provisional,

26   preliminary and permanent injunctive relief.  Plaintiffs are also entitled to restitution

27   of all monies and property obtained from Plaintiffs by Defendants as a direct result

28   of their wrongful conduct.

## SEVENTH CLAIM FOR RELIEF

(Copyright Infringement)

67.     Plaintiffs incorporate the allegations of each foregoing paragraph as though fully set forth herein.

68.     Plaintiffs are the original author of Cali's website and numerous photographs that appear on its website depicting Cali's products.  Plaintiffs have applied for registration of the copyright associated with the website and the photographs appearing on the website, which has been assigned Case No. 1-3975450641.  A true and correct copy of the application receipt is attached hereto as Exhibit A.

69.     Plaintiffs are informed and believe, and based thereon allege, that Defendants had access to Cali's website and photographs because they are publicly available online, and that Defendants copied the photographs and the text from Cali's website and reproduced the photographs and text on its own website for the purpose of advertising and marketing Rago's brackets.

70.     Defendants' unauthorized reproduction of Plaintiffs' photographs and text from its website constitute infringement of Plaintiffs' copyrights in these works in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

71.     Plaintiffs are informed and believe, and based thereon allege, that Defendants' creation and publication of their infringing website was deliberate, willful, malicious, oppressive, and without regard to Plaintiffs' proprietary rights.

72.     Defendants' copyright infringement has caused, and will continue to cause, Plaintiffs to suffer substantial injuries, loss, and damage to their proprietary and exclusive rights to its website design, text, and photographs, and further has damaged Plaintiffs' business reputation and goodwill, diverted their trade, and caused loss of profits, all in an as yet undetermined amount.  Plaintiffs are entitled to compensatory damages, as well as the profits earned by Defendants as a result of their infringement pursuant to 17 U.S.C. § 504.

73.     Defendants' copyright infringement, and the threat of continuing infringement, have caused and will continue to cause Plaintiffs repeated and irreparable injury.  It would be difficult to ascertain the amount of money damages that would afford Plaintiffs complete relief at law for Defendants' acts and continuing acts.  Plaintiffs' remedy at law is not adequate to compensate them for the injuries already inflicted and further threatened.  Therefore, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502.

74.      Plaintiffs are also entitled to recover their attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.     The damages sustained by Plaintiffs;

2.     Punitive damages;

3.     Injunctive relief prohibiting Defendants from making any further false and defamatory statements about Plaintiffs and their business practices and from using Plaintiffs' Mark and copyrighted works to promote Defendants' products;

4.     A declaration that Defendants do not own any valid trademarks, trade dress, copyrights, or patents associated with their product designs, and that Plaintiffs did not directly, vicariously or contributorily make, copy, buy, sell, reproduce or otherwise infringe on any product designs that may be owned by Defendants;

5.     Plaintiffs' costs in this action and reasonable attorney's fees and expenses;

6.     For such additional and further relief as this Court deems just and proper.

Dated:  September 8, 2016          SEDGWICK LLP

By: */s/ Caroline H. Mankey*

Caroline H. Mankey
Attorneys for Plaintiffs
CALI RAISED LED and BLAKE HAMAR

# DEMAND FOR JURY TRIAL

Plaintiffs Cali Raised LED and Blake Hamar hereby demand a trial by jury on all issues triable by jury.

Dated:  September 8, 2016      SEDGWICK LLP

By: */s/ Caroline H. Mankey*

    Caroline H. Mankey
    Attorneys for Plaintiffs
    CALI RAISED LED and BLAKE HAMAR